**PHIL PHILLIPS FORD, INC., Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY et al., Appellees.**

No. 14875.

Court of Civil Appeals of Texas, San Antonio.

April 30, 1970.

Rehearing Denied May 27, 1970.

Groce, Hebdon, Fahey & Smith, Damon Ball, San Antonio, for appellant.

George H. Spencer, Clemens, Knight, Weiss & Spencer, Moursund, Ball & Young, San Antonio, for appellees.

BARROW, Chief Justice.

Appellant, a Texas corporation doing business as an automobile dealer in Devine, Texas, sued appellees Security Investment Company (SIC) and W. C. Pittman for actual and exemplary damages due to an alleged theft and/or conversion of a 1967 Mercury automobile; and sued appellee St. Paul Fire & Marine Insurance Company upon its policy of insurance admittedly issued appellant, which provided coverage for theft of any automobile from appellant's premises while held for sale. All parties moved for summary judgment upon undisputed facts established by affidavits, stipulations and admissions. Appellees' motions were granted and appellant has duly perfected this appeal from the take-nothing judgment entered herein.

Appellant asserts ten assignments of error, but the first nine relate to the basic question presented by the competing rights of SIC as the holder of a valid security interest in said car under Oklahoma law and appellant as the purchaser of said car for a valuable consideration from James Dignan of Hondo, Texas, at a time when the car was licensed in Texas and Dignan had in his possession a Texas certificate of title thereto which contained no notice of the security interest of SIC.

On January 27, 1967, Donna Lay and Ruby Lay, residents of Tulsa, Oklahoma, purchased the vehicle in question in Tulsa from Fred Jones Lincoln-Mercury, and as consideration therefor executed a Uniform Commercial Code Security and Financial Statement. Such instrument includes a promissory note in the amount of $2,867.76, payable in monthly installments, and further provides that in the event of the default of any obligation "the holder may, without notice or demand for performance or legal process, enter any premises where the vehicle may be found, take possession of it and custody of anything fround in it, * * *." The dealer's interest was subsequently assigned to SIC. The security agreement was filed on February 9, 1967, with the County Clerk of the county of debtors' residence, which perfected such security interest under Oklahoma law.

The vehicle was subsequently brought into Texas without the knowledge or consent of the Lays or SIC. A Texas Certificate of Title to a Motor Vehicle was issued to James P. Dignan of Hondo, Texas, on April 9, 1968, and showed the former owner as Donna Lay of Tulsa, Oklahoma. The only lien shown on this title is one in favor of the Hondo National Bank. Sometime between April 9, 1968, and April 30, 1968, appellant acquired the vehicle

from Dignan, discharged the lien of the Hondo National Bank in the amount of $253.50, and placed the vehicle on its lot for resale. On the night of April 30, 1968, appellee W. C. Pittman, acting under instructions from SIC, went to appellant's lot and surreptitiously repossessed said vehicle. It was delivered to SIC who subsequently returned the vehicle to the original owners upon their payment of the note.

In Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843 (1950), the Court expressly adopted the rule, then in effect in a majority of other jurisdictions, that a mortgage, properly executed and recorded according to the law of the state where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which the property is removed. The Bank of Atlanta, as the holder of a valid chattel mortgage on an automobile which was acquired in the State of Georgia, where the automobile was purchased, and which State had no certificate of title law, was held entitled to enforce its mortgage lien on the automobile as against an innocent purchaser of the automobile who acquired same for value without notice of the bank's lien. The automobile had been surreptitiously removed to Texas without the knowledge or consent of said bank and a Texas certificate of title had been obtained under Art. 1436-1, Vernon's Ann.P.C., on false and fraudulent representation that no lien existed on the automobile. See also, 14 C.J. S. Chattel Mortgages § 15.

In 1965, Texas adopted the Uniform Commercial Code, effective June 10, 1966, which was re-enacted as a part of the Business and Commerce Code in 1967, effective on September 1, 1967. Section 9.-103 relates to the problem presented by removal of goods which are subject to a security interest to another jurisdiction. Subsection (c) thereof provides in part: "If personal property * * * is already subject to a security interest when it is brought into this state, the validity of the security in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. * * * If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state."

Here all parties agree that while the vehicle was located in Oklahoma SIC had a valid and perfected security interest lien upon it, and that it was brought to Texas without the knowledge or consent of the owners or SIC and within four months thereafter sold to appellant. Therefore, under the above provisions of Section 9.-103(c), Vernon's T.C.A., Bus. & C., appellant took the vehicle subject to the outstanding interest of SIC. See Churchill Motors, Inc. v. A. C. Lohman, Inc., 16 A. D.2d 560, 229 N.Y.S.2d 570, New York, Appellate Division, Fourth Department, 1962; Casterline v. General Motors Acceptance Corp., 195 Pa.Super. 344, 171 A. 2d 813, 1961; First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162, 1966.

Appellant urges that this rule has been modified by Subsection (d) of Section 9.-103, which provides: "Notwithstanding Subsections (b) and (c), if personal property is covered by certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate." This provision was added to the Uniform Commercial Code by an amendment in 1959. The purpose of the amendment was stated by the Editorial

Board as follows: "Subsection (4)[1] is new to avoid the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests. The certificate of title law requirements are adopted as the test for perfection." See 1956 Recommendations of the Editorial Board for the Uniform Commercial Code, p. 257.

■ This note by the draftsmen makes clear that this subsection does not have any application to an automobile which was sold under a conditional sale contract in a state which did not require "indication on a certificate of title of any security interest in the property as a condition of perfection," and which was subsequently brought into a state which had such a requirement. Churchill Motors, Inc. v. A. C. Lohman, Inc., supra; First National Bank of Bay Shore v. Stamper, supra. Since it is admitted that Oklahoma did not require that a lien be noted on the certificate of title in order to perfect same, subsection (d) of Sec. 9.103 has no application here and does not modify the effect of SIC's superior lien under Sec. 9.103(c).

■ Appellant urges that in any event the majority rule as adopted by the Texas Supreme Court in Bank of Atlanta v. Fretz, supra, and by Section 9.103(c) of the Uniform Commercial Code is inapplicable because SIC caused the vehicle to be taken from appellant's premises without first foreclosing its lien upon the vehicle in question. It is seen that the security agreement which is the basis of SIC's lien authorizes it to take possession of said vehicle without notice or legal process in the event of any default under the contract. Furthermore, Section 9.503 of the Uniform Commercial Code provides in part: "Un- less otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." Therefore, however high-handed and reprehensible SIC's conduct may have been in repossessing the vehicle in this manner, it does not affect the validity of its lien and right to repossess the vehicle under same.

■ Under its tenth point, appellant urges that appellees' motions for summary judgment were improperly granted because there was no evidence of probative force that the promissors (Lays) were in default on the note secured by SIC's lien. The uncontroverted affidavit of Mr. Eaton, vice-president of SIC is that payments on said note were past due. Furthermore, the record is undisputed that a lien was placed on the vehicle in favor of the Hondo National Bank, which was a breach of one of the provisions of the security agreement. Appellant's tenth point is accordingly without merit and is overruled.

■ We have made no specific mention of appellee St. Paul, in that appellant's cause of action against it is limited to recovery of the value of the car under a policy of theft insurance. It necessarily follows that since SIC and its agent, Pittman, had the legal right to repossess such vehicle, such taking does not constitute a theft loss under St. Paul's policy of insurance. Talasek v. Travelers Fire Insurance Company, 242 F.2d 748 (5th Cir. 1957); Riley v. Motorists Mutual Insurance Company, 176 Ohio St. 16, 197 N.E.2d 362 (1964); 5 Appleman Insurance Law and Practice, § 3211.

The judgment of the trial court is in all things affirmed.

---

1. Texas Business and Commerce Code identifies the subsections as "a–d" in lieu of "1–4."