Howard A. Zeller, J.
Both parties move for summary judgment in this action for alleged conversion by defendant First Bank and Trust, Boynton Beach, Florida in the repossession of a tandem dump truck. When repossessed the truck was registered to plaintiff in New York and in his possession in New York.
Through a series of Florida transactions in which the bank held the continuing lien of a chattel mortgage or a note and security agreement, Paul DeForest, Sidney, Delaware County, New York, acquired title to a 1964 Chevrolet truck subject to the lien of the existing debt which DeForest guaranteed.
Before the sale of the truck to DeForest the bank on May 1, 1967 gave written permission to DeForest and his vendor, a Walter Le Seur, to register the truck in New York State. In some manner ownership was transferred in Florida to DeForest on August 29, 1967. As of October 2, 1967 a Florida certificate of title was issued to DeForest and the bank's lien against the vehicle in the amount of $5,518.56 was noted on DeForest’s certificate of title. In Florida DeForest took title to the truck without registering it there. In 1967 DeForest brought the truck to *847 New York, registered it in New York and, on or about March 19, 1969 sold the truck to plaintiff for $5,000 cash. Plaintiff’s testimony is that although he asked DeForest about liens he was not advised of the Florida bank’s lien and that he had searched the Delaware County Clerk’s office and no lien or financing statement had been filed as to this truck registered in DeForest’s name. On the only evidence present plaintiff was an innocent buyer for value in good faith but not in the ordinary course of business. (See Uniform Commercial Code, § 1-201, subd. [9]; § 9-301, subd. [1], par. [c]; § 9-307, subd. [1].)
DeForest did not apply the purchase price to the bank’s lien, defaulted on his payments thereon and the bank thereafter located the truck and repossessed it on or about May 20,1969 in Binghamton, New York.
Although Florida has substantially adopted the Uniform Commercial Code governing filing lien transactions (see Fla. Stat., chs. 671-680), as to motor vehicles Florida is a so-called “title ” State, wherein the primary and best indicia of motor vehicle ownership is a certificate of title upon which are recorded any liens against the vehicle if the creditor chooses to protect himself by so doing. Article 9 of the Uniform Commercial Code deals with the filing of security interests in secured transactions. The adopted Florida version of the code does not require the filing of a financing statement to perfect a security interest in motor vehicles. The New York version of the code requires such a filing. (See Uniform Commercial Code, § 9-302, subd. [1], pars, [a], [c].)
To perfect its lien in Florida under Florida law the bank required DeForest to secure and turn over the truck’s certificate of title on which was noted a lien of the bank’s filed May 6,1967. The bank retained the certificate of title as added paper security as it was required to do. (Florida Motor Vehicle Law, Fla. Stat., § 319.24, subd. [2].) DeForest’s application for the title certificate acknowledged the bank’s lien. A Florida certificate of title is entirely separate from the annual license registration of a motor vehicle and both are required elements to properly transfer title in Florida. (Florida Motor Vehicle Law, Fla. Stat., § 319.22.) In Florida transactions the notation of liens on a certificate of title thus serves to protect both the creditor and a prospective third-phrty purchaser.
Howevgr, in this case the bank not only was aware that DeForest intended to remove the truck to New York for business use here but gave written permission to register the truck in New York State. This practice was then accepted in New York.
*848 New York is a so-called “ filing ” State in which unsatisfied liens are perfected against an owner and the vehicle by filing the lien contract or a financing statement, usually in the county of the debtor’s residence, and title is transferred by merely transferring the vehicle’s license registration, which is the accepted indicia of ownership in New York. (Uniform Commercial Code, art. 9; §§ 9-103, subd. [2], 9-302, subd. [1], pars, [c] and [d]; 9-401, subd. [1]; Vehicle and Traffic Law, § 401; see Scholick v. Fifth Ave. Coach Co., 188 Misc. 476.) In local New York transactions such filing thus secures the creditor and gives notice of any lien to third-party purchasers on whom is put the burden of searching the appropriate filing office. Concededly the bank did not file a statement of its lien against the truck in the county of DeForest’s New York residence.
Subdivision (2) of section 9-103 of the New York Uniform Commercial Code states ‘1 If the chief place of business of a debtor is in this state, this Article governs the validity and perfection of a security interest * * * the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern.” The section has clear reference to commercial vehicles and automotive equipment, such as is here involved, and contemplates multi-State transactions. (See Uniform Commercial Code, § 9-109, subd. 2.)
Subdivision (2) then continues: “ If the chief place of business is located in a jurisdiction which does not provide for perfection of the security interest by filing or recording in that jurisdiction, then the security interest may be perfected by filing in this state.”
Except for a provision therein not here pertinent section 9-103 has been incorporated in the Florida Uniform Commercial Code effective January 1, 1967 which was prior to any of the transactions here involved.
The common public policy in all jurisdictions is that both a secured interest holder and an innocent purchaser for value should be protected by notice from fraud. Underlying this is the further principle that all parties to a lien transaction (or a transaction possibly involving a lien) have a responsibility in relation to it for their own protection and that of others possibly concerned by giving an effective notice of an out-of-State lien in known multi-State transactions. (See, e.g., Florida Motor Vehicle Law, Fla. Stat., § 319.27, subd. [2], subd. [3], pars, [b] and [c].)
Plaintiff Seely had no knowledge of the Florida source of origin of the truck. To complete this sale DeForest did not have *849 to present the Florida certificate of title held by the Florida bank because the bank had permitted New York registration, which registration stands as a certificate of title in New York. The evidence is that plaintiff both inquired of DeForest and checked in the proper county office here to see if any liens had been filed against the truck and found no liens. Plaintiff Seely therefore had no notice of the bank’s lien nor would ordinary diligence on his part have revealed its existence.
Obviously the difference in title forms and lien procedures between Florida and New York provided the stage. The bank’s permission to register the truck in New York without filing against it set that stage for the fraudulent performance resulting in the damages of which plaintiff now complains. The question is upon which of the parties to this lawsuit should the loss fall.
Defendant argues that subdivision (4) of section 9-103 prevails over subdivision (2) in providing that “Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.” Thus, it is contended, since the bank’s lien was noted on DeForest’s Florida certificate of title that lien prevails over the interest of the innocent purchaser for value in New York without the bank being required to file a financing statement in the New York county of DeForest’s residence.
However, there is no real conflict between the Florida and New York law as would so favor this Florida lienor. The suggested application of subdivision (4) to this case would require an examination of applicable Florida law. But the obviously pertinent Florida law is subdivision (2) of section 9-103 of the code requiring application of the filing laws of the chief place of business of the debtor, — in this case New York, which has in effect a substantially identical subdivision (2) and is a “ filing ” State.
And, as an entering Stale, Florida itself denies enforcement of foreign perfected liens and declares them invalid unless that foreign lien has been duly reperfected in Florida. (Florida Motor Vehicle Law, Fla. Stat., § 319.22, subd. [1]; § 319.27, subd. [2], subd. [3], pars, [b] and [c].)
Thus, in the face of subdivision (4), and despite whatever its intended application, both New York and Florida law clearly provides for the filing, recording and reperfection of foreign liens against commercial vehicles under the laws of that State in which *850 is located the debtor’s chief place of business. In transfers of commercial vehicles from the “title ” State of Florida to the “filing” State of New York when the circumstances do not require the certificate of title to transfer ownership, subdivision (4) merely provides a circuitous route to the conclusion that this Florida lienor should have filed in New York to here perfect its lien. When presentation of a foreign certificate of title is required to transfer title to a New York purchaser effective notice of any existing foreign liens is given on the face of the certificate and the application of subdivision (4) appears redundant. But the certificate of title was not necessary to this transaction in New York.
The problem is that subdivision (4), because of obtuseness, internal ambiguity and lack of specificity, not only creates internal conflicts in the body of law surrounding it but, in such factual situations as here, creates an apparent but false conflict in laws between jurisdictions. Many of the other serious ramifications of this “scrambling” effect of subdivision (4) are noted by Hughes, Interstate Movement of Motor Vehicles Subject to Security Interests: A case for Repealing UCC § 9-103 (4), 54 Cornell L. Rev., 6KM523 (1969).
On the facts of this case subdivision (4) of section 9-103 of the code even if it be applicable, does not have the saving effect here claimed by defendant.
Secondly, the Florida lienor knew the truck was to be removed to the buyer’s New York place of business. The lienor, by letter, permitted New York registration which here served as title to the vehicle. From the date of such New York registration on, this commercial vehicle was in law “ covered” by New York title, rather than the Florida certificate of title at all times retained in Florida and the presentation of which was not required to subsequently transfer title in New York. By its own terms subdivision (4) refers only to ‘ ‘ personal property # * * covered by a certificate of title ” (emphasis supplied), which was not the case here once New York registration was permitted.
Further, keeping in mind the obvious common public policy of both Florida and New York to protect both security interests of bona fide lienors and innocent after-acquired interests, subdivision (2) of section 9-103 of the code enacted both by New York and Florida clearly applies to the facts here. Means existed whereby defendant easily and inexpensively could have perfected its lien in New York, but it did not.
The purchase interest of plaintiff acquired not in the ordinary course of business for fair value in good faith without notice has *851 priority over the security lien of defendant unperfected in New York. (Uniform Commercial Code, § 9-301.)
Plaintiff should be granted summary judgment and defendant’s motion for summary judgment should be denied.
Trial of the facts relating to damages should be had at a Trial Term of Supreme Court for Delaware County. A note of issue may be filed to place this issue on the Trial Calendar.