C-21

DOENGES-GLASS, INC., A COLORADO CORPORATION *v.*
GENERAL MOTORS ACCEPTANCE CORPORATION,
A CORPORATION.
(488 P.2d 879)

Decided September 20, 1971.

HENRY, COCKRELL, QUINN & CREIGHTON, VICTOR QUINN, PETER J. WIEBE, JR., for petitioner-appellant.

ROBERT D. CHARLTON, for respondent-appellee.

RONALD LEE COOKE, ELWYN F. SCHAEFER, for amicus curiae Colorado Auto Dealers Association.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THIS court granted certiorari to review the decision rendered by the Court of Appeals reported at 28 Colo. App. 283, 472 P.2d 761. We agree with the result reached by the Court of Appeals; however, we disagree with the rationale upon which the court obtained the result.

The facts in the instant case are set forth at length in the Court of Appeals' opinion and will only be summarized herein. In May 1966, one Taibi purchased an automobile in New York State (Suffolk County) from Anthony Buick, Inc. under a retail installment contract. The contract was assigned to respondent General Motors Acceptance Corporation (GMAC). A financing statement was filed in the office of the County Clerk, Suffolk County where Taibi resided as is required by New York law in order to perfect a security interest in a motor vehicle. Subsequently, in November of 1966, without notice to GMAC, Taibi brought the car to Denver and sold it to petitioner Doenges-Glass. Taibi signed the New York certificate of registration over to Doenges-Glass, using the form provided for such transfer on the back of the registration certificate; he also signed an affidavit warranting that there were no liens outstanding

against the car. GMAC, shortly thereafter, traced the car to Doenges-Glass and brought suit for conversion. The trial court entered a summary judgment in favor of GMAC and the judgment was affirmed by the Court of Appeals.

Extensive briefs have been submitted by both parties as well as by amicus curiae Colorado Auto Dealers Association. The sole issue upon this review is whether the lien held by GMAC and properly perfected under New York law is enforceable against Doenges-Glass, who purchased the car in reliance on the New York registration certificate, which did not show GMAC's lien, and the affidavit of Taibi that there were no outstanding liens.

■ Since the transaction between Taibi and Doenges-Glass took place in November of 1966, it comes after the date of July 1, 1966 upon which the Colorado version of the Uniform Commercial Code became effective. Vol. 7A, Perm. Supp., C.R.S. 1963, 155-9-103(3) states that the validity of foreign security interests in personal property is governed by that section "[e]xcept to the extent that motor vehicle titles are governed by section 13-6-32, C.R.S. 1963. . . ." The usage of the broad term "motor vehicle titles" indicates the legislative intent that whenever the question as to title to a motor vehicle arises with regard to a foreign security interest, the question is to be answered by application of C.R.S. 1963, 13-6-32 and is precluded from the application of the provisions of Vol. 7A, Perm. Supp., C.R.S. 1963, 155-9-103(3).

C.R.S. 1963, 13-6-32 reads as follows:

"Foreign mortgages. — *No mortgage,* as defined in section 13-6-2, *on a motor vehicle,* filed for record in any state other than the state of Colorado shall be valid and enforceable against the rights of subsequent purchasers for value, creditors or mortgagees, having no actual notice of the existence thereof. *If the certificate of title for such vehicle,* whether *issued under the laws of* this state or

*any other state,* bears thereon any notation adequate to apprise a purchaser, creditor, or mortgagee of the existence of such mortgage at the time any third party acquires a right in the motor vehicle covered thereby, such mortgage and the rights of the holder thereof shall be enforceable in this state the same and with like effect as though such mortgage were filed in the state of Colorado and noted on the certificate of title in the manner prescribed in section 13-6-20." (Emphasis added.)

▆▆ Initially, we note the well established rule of construction that words and sentences in a  statute must be construed in relation to the rest of the paragraph. *People ex rel. Marks v. District Court of Adams County,* 161 Colo. 14, 420 P.2d 236. When the meaning of language in a statute is unclear, the legislative intent must be determined by consideration of the language in the context of the statute together with the object of the statute and the consequences which would follow either construction of the statute. *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819.

If taken literally, the first sentence of C.R.S. 1963, 13-6-32 would indicate that no foreign mortagage shall be enforceable against a subsequent purchaser for value in Colorado. However, the second sentence of the same section refers to the "certificate of title for such vehicle . . . under the laws of . . . any other state."

Thus, it would appear that the second sentence modifies and thus limits the first sentence to application to mortgages originating in certificate of title states.

▆ The object of C.R.S. 1963, 13-6-1 *et seq.,* "The Certificates of Title Act," was undoubtedly to make transfer of title easier and less vulnerable from the attendant risks of stolen cars and secret liens. Additionally, as stated by former Justice Doyle in *Federico v. Universal C.I.T. Credit Corporation,* 140 Colo. 145, 343 P.2d 830:

"[S]ec. 13-6-32 seems clearly designed to encourage other states to require notation as a means of protecting their citizens holding mortgages on motor vehicles which can

easily be moved into Colorado as well as to other states . . . ."

As noted by counsels' briefs, *Federico* specifically declined to determine whether 13-6-32 applies to mortgages executed in states not issuing certificates of title, such as New York.

Finally, we note that should we determine that 13-6-32 applies to non-certificate of title states, the effect would be to allow purchasers in Colorado, without any investigation whatsoever, to buy a car free and clear of liens not noted on the registration certificate even though the foreign state does not require such notation. While this construction has some merit in terms of compelling foreign jurisdictions to update their motor vehicle ownership and registration laws, we think that the construction is too drastic in its consequences for the legislature to have intended it without explicit language to that effect.

The consequences of such a construction are drastic in three respects: (1) The Colorado purchaser is not put under even a reasonable duty of ascertaining if any foreign mortgages exist; (2) the foreign mortgagee's lien loses all priority in relation to the purchaser even though it is properly perfected in his state; (3) the culprit who transfers the car under the lien is encouraged to do so.

█ The Court of Appeals' opinion holds that our Title Certificate Act contemplates that the Colorado purchaser must require the culprit seller to apply for Colorado title in order that the purchaser be protected. This is based upon the language in C.R.S. 1963, 13-6-8 specifying that "no purchaser or transferee shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred to him. . . ." However, in light of: (1) the provisions of C.R.S. 1963, 13-6-18(2) providing that the dealer may acquire ownership of the vehicle by any lawful means *and not be required to obtain a Colorado certificate of*

524

*title* so long as he holds the vehicle for sale and at his place of business, and (2) the provisions of C.R.S. 1963, 13-6-18(5) providing that the dealer provide the theft division of the Colorado State Patrol with a monthly list of vehicles held by the dealer whether such vehicles are held under a foreign certificate of title or are *registered under the laws of another state,* we conclude that the Certificate of Title Act doesn't contemplate that a Colorado title always be transferred in order that the Colorado purchaser acquire right, title or interest to the vehicle in question. C.R.S. 1963, 13-6-8 has application in those cases where a certificate of title does exist, be it a foreign or Colorado certificate. In such a case, the particular certificate must be transferred, otherwise no "right, title or interest" is transferred.

The further fallacy with this view is that Colorado title must be used for the transfer of title involved in the instant circumstances is that the process of applying for and obtaining a Colorado Certificate of Title apparently does not serve to disclose any foreign liens which are not brought to the attention of the department of motor vehicles by the applicant. We infer this from the fact that a Colorado title was issued to the party who purchased the car from Doenges-Glass and that this title issuing process did not disclose the New York GMAC lien. See comment to the same effect in casenote by C. Calhoun, *Commercial Transactions, 1970 Annual Survey of Colorado Law,* at 38 (1971).

We must determine the issue before us on the basis of our case law with an eye to the policies expressed by the legislature in enacting the Colorado version of the Uniform Commercial Code and the Colorado Certificate of Title Act.

C.R.S. 1963, 13-6-7 states that the Colorado Certificate of Title shall be prima facie evidence of the matters contained therein (*e.g.* liens) and that the person in whose name the certificate is registered is the lawful owner. In comparison, New York has recognized a dis-

tinction between certificates of registration and certificates of title and New York case law holds that the two are not equivalent. A certificate of registration is presumptive evidence of ownership of an automobile but the presumption is rebuttable. *See People v. Sapienza,* 51 Misc. 2d 786 N.Y.S. 2d 32; *Paglia v. State,* 278 App. Div. 281, 105 N.Y.S. 2d 597, *aff'd,* 303 N.Y. 821, 104 N.E. 2d 369. If the New York certificate of registration were a certificate of title and did not show the liens upon its face, then by operation of C.R.S. 1963, 13-6-32, the liens would not be enforceable against a Colorado purchaser upon transfer of the certificate. However, since the New York courts have recognized the distinction, we hold that a reasonable duty of inspection is required by the Colorado purchaser to ascertain if foreign mortgages exist upon a motor vehicle from a non-certificate of title state.

In the instant case, had Doenges-Glass checked the county shown on the registration certificate (Suffolk) for liens against this motor vehicle, it would have acted reasonably and would prevail over lien-holders not disclosed by such a search. However, Doenges-Glass relied only upon the registration certificate, which shows no liens, and the affidavit of the seller. Such a "search" cannot be said to be reasonable. Hence, GMAC must prevail, especially since the search by Doenges-Glass on the above basis would have disclosed the GMAC lien.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE ERICKSON concur.