JOHN DEERE COMPANY, A Corporation, Plaintiff-Appellant,

v.

J. W. SANDERS, Defendant-Respondent.

No. 11712.

Missouri Court of Appeals,
Southern District,
Division Three.

May 14, 1981.

Motion for Rehearing or to Transfer to Supreme Court Denied June 3, 1981.

Application to Transfer Denied
July 14, 1981.

John W. Ringer, Powell, Ringer & Ringer, Dexter, for plaintiff-appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for defendant-respondent.

PER CURIAM.

On September 18, 1979, plaintiff, John Deere Company, filed a petition in the Circuit Court of Pemiscot County, Missouri, for replevin of a John Deere 4400 combine. Defendant filed a motion to dismiss the petition on the grounds that it did not state facts to show plaintiff was entitled to relief. The trial court, on February 11, 1980, entered an order sustaining the motion, and dismissed plaintiff's petition with prejudice. This appeal followed.

The basic factual allegations of the petition are as follows. On August 28, 1976, Danny Joe Grissom and Joe Grissom, who were residents of the state of Mississippi, purchased a John Deere 4440 combine from Rice's Equipment Company (Rice). The transaction occurred in Starkville, Oktib-beha County, Mississippi. The Grissoms executed a purchase money retail installment contract and security agreement for the balance of the purchase price, which amount, including finance charges, was $26,049.24. Rice, on the same day, for value received, assigned the contract and security agreement to plaintiff. On September 3, 1976, the security interest of plaintiff was perfected in Mississippi, by the filing of a financing statement in proper form, with the Clerk of the Chancery Court of Oktib-beha County, Mississippi.

The contract and security agreement, a copy of which was attached to the petition, provided that the Grissoms agreed to keep the combine in Oktibbeha County, Mississippi; would be in default if the Grissoms attempted to sell the combine; and, that in the event of default, the holder of the contract and agreement was authorized to take possession of the combine, and exercise other remedies provided by law. The Grissoms, in violation of the contract and security agreement and without the knowledge or consent of plaintiff, removed the combine from Oktibbeha County, Mississippi to the state of Missouri, where, on January 13, 1977, it was sold to Don Medlin in Pemiscot County, and was resold by Medlin to defendant J.W. Sanders on March 7, 1977. The petition does not state on what date the combine was removed from the state of Mississippi, but does state that the sales to Medlin and to Sanders both occurred within four months of the time that the combine was removed from the state of Mississippi.

The petition alleged that the sale of the combine from Medlin to defendant, within four months after the combine had been removed to Missouri, was subject to the security interest plaintiff had perfected in Mississippi; that defendant was in possession of the combine and refused to surrender possession of it to plaintiff; that plaintiff was legally entitled to immediate possession of the combine; that the combine had not been seized under any legal process; and, that plaintiff was in danger of losing its security interest unless it was given immediate possession of the combine or the

property was otherwise secured. The petition also alleged that the present value of the combine was $24,000. The alleged facts in the petition were verified by plaintiff's affidavit.

The petition's prayer requested a prejudgment seizure of the combine, a judgment for its possession, and, in the event possession could not be obtained, that plaintiff be awarded a judgment of $24,000 against defendant.

■ On appeal, plaintiff contends that the trial court erred in dismissing its petition since the petition set forth the necessary requisites of a cause of action in replevin. Rule 99.01,[1] provides that a person claiming the right to possession of personal property may bring an action in replevin for possession of the property. Rule 99.03 provides that:

"[w]hen a party requests immediate possession of personal property an affidavit shall be filed stating:

a) The description of the property;

b) Facts showing the party is entitled to the possession of the property;

c) The actual value of the property;

d) The property has not been seized under any legal process;

e) The party is in danger of losing the property unless immediate possession is obtained or the property is otherwise secured."

Section 533.010, reads basically the same as Rule 99.03. Appellant takes the position, which is valid, that for the purpose of reviewing an order dismissing a petition for failure to state a legal claim, the facts alleged in the petition must be taken as true and the petition should be viewed in its most favorable light, citing *Reed v. Catlett*, 228 Mo.App. 109, 68 S.W.2d 734, 735 (1934). Applying this test, the petition alleges facts that meet the requirements of subparagraphs a), c), d), and e) of Rule 99.03.

■ The problem is whether the petition meets the requirement of Rule 99.03(b) by stating facts showing that the plaintiff is entitled to possession of the combine. The petition pleads that plaintiff has a properly perfected security interest in the state of Mississippi, that the Grissoms defaulted on their contract and removed the combine to Missouri, without the knowledge or consent of plaintiff, and that the combine was sold to Medlin and resold to defendant within four months after its removal from Mississippi to Missouri. Plaintiff's position is that the perfecting of its security interest in the state of Mississippi constituted constructive notice to Medlin and defendant in Missouri, and that defendant purchased the combine subject to the security interest of plaintiff. Defendant contends that plaintiff, by failing to reperfect its security interest by filing in Missouri, lost its preferential status, making its claim to the combine subordinate to that of defendant, who was an innocent purchaser. This is the issue on which battle was joined in the trial court, and is the only issue here.

There is no question that plaintiff's view was correct before Missouri adopted the Uniform Commercial Code. See *Memphis Bank & Trust Co. v. West*, 260 S.W.2d 866, 875 (Mo.App. 1953); *Finance Service Corporation v. Kelly*, 235 S.W. 146, 147–148 (Mo. App. 1921); and *National Bank of Commerce v. Morris*, 114 Mo. 255, 21 S.W. 511, 513 (1893). In these cases, the appellate court held, that based on the principles of comity, a chattel mortgage properly filed in the originating state gave constructive notice to innocent purchasers in Missouri, where the article was removed to Missouri without the knowledge or consent of the mortgagee, and where the mortgage had not been filed in Missouri prior to the time of its sale.

The only question remaining is whether Missouri's adoption of the Uniform Commercial Code (UCC) changed this rule of law. This question is one of first impression in Missouri. The pertinent portion of § 400.9–103(3), patterned after § 9–103 Uniform Laws Annotated—Uniform Commercial Code, reads as follows:

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

"If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four-month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state."

This section was adopted by the Missouri Legislature in 1963, and has not been amended since.

The four-month protection period proviso set out in the statute has been interpreted two different ways. The first view gives the secured party four months of absolute protection in the removal state, and the second gives him four months of conditional protection, the condition being refiling in the removal state within that four-month period. The absolute protection version is favored by the overwhelming weight of authority in both cases[2] and commentary.[3] The absolute protection version is compatible with substantive law in Missouri that predated the enactment of § 400.9–103(3). The statute merely modified Missouri substantive law by limiting the period during which an out-of-state lienholder would have absolute priority over a Missouri purchaser to a period of four months, without reperfecting the security interest by filing in Missouri. See *Community Credit Co. v. Gillham*, 191 Neb. 198, 214 N.W.2d 384, 388 (1974) for a similar view.

On appeal, defendant agrees that the absolute protection rule is the majority view, but argues that Missouri should apply the minority view, i.e., the conditional protec-

**2.** The following cases follow the absolute protection version: *American State Bank v. White*, 217 Kan. 78, 535 P.2d 424 (1975); *City Bank & Trust Co. v. Warthen Service Co.*, 91 Nev. 293, 535 P.2d 162 (1975); *Community Credit Co. v. Gillham*, 191 Neb. 198, 214 N.W.2d 384 (1974); *General Motors Acceptance Corp. v. Long-Lewis Hardware Co.*, 54 Ala.App. 188, 306 So.2d 277 (1974); *Morris v. Seattle-First National Bank*, 10 Wash.App. 129, 516 P.2d 1055 (1973); *First Bristol County National Bank v. Shirley*, 11 U.C.C.Rep. 378 (Tenn.App.1972); *Newton-Waltham Bank & Trust Co. v. Bergen Motors, Inc.*, 68 Misc.2d 228, 327 N.Y.S.2d 77 (1971), aff'd without opinion 75 Misc.2d 103, 347 N.Y.S.2d 568 (1972); *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.*, 454 S.W.2d 465 (Tex.Civ.App. 1970), aff'd on other grounds 465 S.W.2d 933 (Tex. 1971); *Pascack Valley Bank & Trust Co. v. Ritar Ford, Inc.*, 6 Conn.Cir. 489, 276 A.2d 800 (1970); *Utah Farm Production Credit Association v. Dinner*, 302 F.Supp. 897 (D.Colo. 1969); *First National Bank v. Stamper*, 93 N.J.Super. 150, 225 A.2d 162 (1966); *Al Maroone Ford, Inc. v. Manheim Auto Auction, Inc.*, 205 Pa.Super. 154, 208 A.2d 290 (1965); *Churchill Motors, Inc. v. A.C. Lohman, Inc.*, 16 A.D.2d 560, 229 N.Y.S.2d 570 (1962).

The following cases have preferred the conditional protection version: *Arrow Ford, Inc. v. Western Landscape Construction Co.*, 23 Ariz. App. 281, 532 P.2d 553 (1975); *United States v. Squires*, 378 F.Supp. 798 (S.D.Iowa 1974).

**3.** The following commentators assert that § 9–103(3) gives four months of absolute protection, although not all agree that that is the better rule: Gilmore, Security Interests in Personal Property, § 22.8, pp. 626–27 (1965); 4 Anderson, Uniform Commercial Code (2d ed.) § 9–103:16; Note, Resolving Conflicts Arising From The Interstate Movement of Motor Vehicles: The Original UCC § 9–103 And Its Successor, 35 Ohio St.L.J. 990, 992 n.8 & 996 n.27 (1974); Coogan, The New UCC Article 9, 86 Harv.L.Rev. 477, 535 (1973); Headrick, The New Article Nine of the Uniform Commercial Code: An Introduction and Critique, 34 Mont. L.Rev. 218, 240 (1973); Hawkland, The Proposed Amendments to Article 9 of the UCC-Part 6: Conflict of Laws and Multistate Transactions, 77 Com.L.J. 145, 150–51 (1972); Weintraub, Choice of Law In Secured Personal Property Transactions: The Impact of Article 9 of The Uniform Commercial Code, 68 Mich.L.Rev. 684, 713 (1970).

The following commentators support the conditional protection version of § 9–103(3): White and Summers, Uniform Commercial Code, pp. 848–49 (1972); Vernon, Recorded Chattel Security Interests in the Conflict of Laws, 47 Iowa L.Rev. 346, 377–78 (1962). See also UCC § 9–103, Comment 7 (1962 Official Text).

**610**

tion approach, for the reason that the Uniform Commercial Code has been amended to make the conditional protection view the prevailing one. In 1972, the following code revision was made in Uniform Commercial Code Section 9–103(1)(d)(i):

"(d) When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article [4] to perfect the security interest,

(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal; . . . ."

Defendant urges that to insure uniformity under the code we should adopt this interpretation as the correct one. The argument is ingenuous but not persuasive. What we are dealing with here is the interpretation of a state statute, which is § 400.9–103(3). We believe that a fair reading of this section mandates absolute protection of plaintiff's security interest that it had perfected in Mississippi for a period of four months from the time of the removal of the combine to Missouri, regardless of whether plaintiff had reperfected such interest by filing in Missouri. Defendant is asking us to judicially amend the statute to conform with the intent and meaning of the 1972 Uniform Commercial Code Revision. We decline to do so. The business of legislating should be left to the General Assembly. They have had eight years to adopt the proposed statutory revision, but have chosen not to do so. This being so, we do not believe that we should read into our present statute something that is not there.

4. Part 3 of the Article applies to perfection of security interests in accounts, general intangi-

The petition states the facts as required by Rule 99.03 and, therefore, states a claim for relief under present Missouri law. The trial court erred in sustaining the motion to dismiss plaintiff's petition.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with directions to set aside its order of February 11, 1980, which order dismissed plaintiff's petition with prejudice, and to grant defendant sufficient time to file responsive pleadings to plaintiff's petition.

All concur.