Salvatore T. DeMatteo, J.
The plaintiff moves for summary judgment dismissing the defendant’s answer and for a judgment in the sum of $5,250, on the grounds that there are no justiciable issues. The essential facts are as follows:
On February 12, 1970, Irwin Zide purchased a 1970 Cadillac automobile for the sum of $5,250 from Frost Motors, Inc., an auto dealer in the State of Massachusetts. The sale was made by way of an installment contract which gave the auto dealer a security interest in the motor vehicle, which was assigned to the 1STewton-Waltham Bank & Trust Company, the plaintiff herein. The purchaser, “ Zide,” signed the security agreement and also a financial statement which was filed on February 19, 1970, with the Massachusetts Secretary of State and the Town Clerk of Brookline, Massachusetts.
Mr. Zide made three monthly payments pursuant to the installment contract; however, he defaulted on the June payment. Whereupon, the plaintiff bank placed the matter under scrutiny which revealed that the automobile had been stolen from Massachusetts on June 6 and recovered in New York City a day later, as substantiated by the records of Brookline, Massachusetts Police Department. A subsequent search, conducted on August 10, 1970, of the Massachusetts Registry of Motor Vehicles recorded that Mr. Zide had surrendered his license plates on July 5,1970, and transferred this vehicle to defendant, Bergen Motors, Inc., of Brooklyn, New York, for the sum of $3,505.
Thereafter, the plaintiff bank, by letter dated August 14,1970, demanded of the defendant the return of the car or the monetary value thereof, which defendant refused to do. On September 28, 1970, the plaintiff refiled a security agreement with the Kings County Register and the New York Secretary of State in order to perfect a New York lien on this vehicle.
The plaintiff, on November 11, 1970, ascertained from the records of the New York Motor Vehicle Department that the car *230 hadybeen sold by Bergen Motors, Inc., to Maria Ghicciardo, the wife of the defendant’s president.
The cardinal issue in the case at bar is the effect of the Massachusetts lien upon the defendant, Bergen Motors, Inc., assuming it to be an innocent purchaser for value without notice.
The validity of the lien secured by “ Frost ” in the State of Massachusetts and the assignment thereof to the plaintiff is undisputed. (See Uniform Commercial Code, § 9-302, subd. [1], par. Ed].)
It is also clear that such compliance to the code’s requirement creates in favor of the secured party a lien which is binding on the general commercial world with certain exceptions. Section 9-201 of the code provides: “ Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. ’ ’
The major exception to this rule is found in subdivision (1) of section 9-307, which provides, “A buyer in the ordinary course of business # * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.” (Emphasis supplied.) This protected fellow may be defined as one who purchases merchandise in the ordinary course of affairs from a merchant in th§ business of vending items of that nature. (See Uniform Commercial Code, § 1-201, subd. [9].)
Hence, the court in Makransky v. Long Is. Reo Truck Co., (58 Misc 2d 338) ruled that a purchaser who bought a truck in the ordinary course of business from an auto dealer took free of the security interest previously created by such merchant. The rationale therein was that the party creditor who places goods with a merchant gives him (merchant) the power to transfer all rights of the entrustor to the buyer in the ordinary course of business despite the lien. (See Uniform Commercial Code, § 2-403, subd. [2].) To hold otherwise, would be to place the fate of the consuming public in the hands of a few devious merchants. It is patent, however, that Zide was not an auto merchant and, hence, the purchase of a vehicle from bfm cannot constitute Bergen Motors, Inc., as á buyer from a merchant in the ordinary course of business. A merchant is one who engages in an economic enterprise on a systematic basis, not merely an isolated transaction. Therefore, the recordation of the appropriate documents in Massachusetts constitutes constructive notice to Bergen Motors, Inc., of the bank’s paramount position and, conversely, of its own subordinate status. (See Robar Assoc. v. Lori Motors Sales Cory., 27 Misc 2d 860.)
*231 The defendant, by virtue of the Massachusetts registration certificate which transferred title to it, was actually aware that the vehicle was a foreign one. Discretion dictated that the defendant, an auto dealer, itself a merchant, sophisticated in the intimacies of the industry, should have conducted an investigation of the car’s origin. Such action would have revealed that Mr. Zide’s title was defective. It is a common-law maxim that one takes the title that his vendor can transfer, unless he comes within the purview of a statutory exception. Hence, Mr. Zide’s sale of the Cadillac automobile to the defendant does not emancipate the vehicle from the yoke of the Massachusetts security interest.
However, does the theft of the automobile from Massachusetts and its transportation to this State render the Massachusetts security interest ineffectual here?
The solution to this query is to be found in subdivision (3) of section 9-103 of the code. This section reads, in part, as follows: ‘ ‘ If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months ”.
This statutory scheme was devised to reconcile the conflicting judicial attitudes as to whether the conditional vendor or the innocent foreign purchaser should bear the consequences of the misconduct of the conditional vendee. The majority position held that the risk of loss was placed upon the foreign resident who purchased the vehicle from the culprit vendee. A few States, however, assigned the loss to the conditional vendor because he had failed to supervise the location of the property and had made possible the deception.
The code chose a middle ground in an effort t'o strike an equitable compromise between the conflicting interests. The code held that the conditional vendor was responsible for the whereabouts of his property. Therefore, if he discovered that it had been removed to another State, he was obligated to promptly refile his security interest in that jurisdiction. On the other hand, subsequent purchasers, in the State to which the property had been taken, would run the risk of there being outstanding security interests elsewhere and being subject thereto.
This four-month period granted the vendor absolute protection throughout the Nation while he attempted to locate the missing chattel. However, upon the expiration of such period, if *232 the vendor had failed to file a lien in the jurisdiction where the missing property was present, his rights were subordinate to those of an innocent purchaser in that State. It is clear that the protection of the foreign security interest ceases upon the expiration of this period, and a new filing is necessary, during this term, to maintain continued protection.
This court, would therefore, alert conditional vendors of the necessity of superintending the location of their secured chattel. This procedure must be undertaken lest the secured goods are removed from this State and sold to an innocent purchaser after the four-month protective period. One may lose Uniform Commercial Code protection without actual knowledge of change of situs of the secured chattel. Hence, a dishonest conditional vendee may perpetrate a fraud on the secured creditor by removing the chattel (the car) from the jurisdiction for a four-month period, during which he honors the installment contract and thus lulls the vendor into a sense of false security. After the expiration of this term, in the absence of a refiling, an innocent purchaser may take free of the previously created foreign lien. (See Churchill Motors v. A. C. Lohman, Inc., 16 A D 2d 560.)
It is established by the Brookline police auto theft records that the auto arrived in this State on June 6, and, therefore, the Massachusetts security interest remains in effect to October 5-— a period of four months.
Since all transactions in the State of New York, with respect to the automobile, took place within four months from- the time it was brought into this jurisdiction, the security interest of the conditional vendor is entitled to full protection in New York State.
Therefore, Bergen Motors, Inc., which took title to the car during this four-month period is subject to the outstanding interest of the assignee of the conditional vendor, the plaintiff in this action.
We must now determine if the plaintiff’s motion is justifiable under the facts presented to this court.
CPLR 3212 (subd. [b]) provides “ The motion shall be denied if any party shall show facts sufficient to require a trial of any issues of fact other than an issue as to the amount or the extent of the damages.” (Italics added.)
Thus, if the court entertains any doubt (except as to damages) as to whether a material and triable issue of fact exists, summary judgment will be denied. The existence of such doubt mandates the holding of a plenary trial. However, the court *233 must be convinced that such factual issues raised to defeat the motion are genuine and not a sham.
The defendant contends that plaintiff has not established the date of the car’s entrance to this State, and without such certainty, the four-month period of extraterritoriality granted to this foreign security interest may not be applied to the case at bar.
Furthermore, the defendant contends, since the plaintiff did not renew its interest in this State until September 28, 1970, the sale of the automobile by ‘ ‘ Zide ’ ’ to the defendant on July 8, will take precedence.
However, the plaintiff has submitted to this court, as ‘‘ Exhibit A ”, an official report of the Police Department of Brookline, Massachusetts, which records that the auto was stolen on June 6, 1970, and recovered in New York City on the following day.
1 ‘ Exhibit A ’ ’ has been authenticated in the manner required by CPLR 4540 (subd. [b]) .and contains the judicial certificate required by 4540 (subd. [c]) of the same statute.
Hence, this document is admissible as evidence and it clearly establishes that the subject vehicle had arrived in New York City no earlier than June 6, 1970.
As previously stated, the foreign lien created in Massachusetts enjoys superiority in this jurisdiction for a period of four months from June 6, 1970, without any further measures being undertaken by the plaintiff to localize such foreign security interest.
The court therefore finds that there is no justiciable issue on this point, although there is one as to the measure of damages. The plaintiff seeks to recover the sum of $5,250 as the value of the car. The defendant, however, has submitted a photostatic copy of the bill of sale which reveals that it purchased the vehicle for the sum of $3,505. The court cannot solve this discrepancy based on the record which is before it.
This tribunal believes that there are no factual issues in dispute, with the exception of the extent of damages. The plaintiff has submitted sufficient documentary evidence, which is undisputed, to warrant the rendition of a summary judgment in its favor. These documents are as follows:
1. A copy of the installment contract between Frost Motors and Mr. Zide.
2. A certified copy of the Uniform Commercial Code form filed in the State of Massachusetts.
*234 3. A certified copy of a registration statement signed by Zide filed with the Massachusetts Registry of Motor Vehicles which names Frost Motors as the seller of the automobile.
4. A certified copy of the Brookline police auto theft report; as well as other documents and papers provided us by both litigants.
This court, therefore, grants summary judgment to the plaintiff, except that damages are to be assessed at a hearing to be held on November 24, 1971.