394 A.2d 980

**Lawrence S. WIND**

v.

**WESTINGHOUSE CREDIT CORPORATION, Appellant,**

**and**

**King Koach Marine Sales.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1977.

Decided Oct. 27, 1978.

386

Arthur L. Jenkins, Jr., Norristown, for appellant.

Jack Brian, Upper Darby, for appellee, Lawrence S. Wind.

R. Bernstein, with him Anthony F. Raffaele, Media, for appellee, King Koach Marine Sales.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an action in replevin for possession of a motor boat. The questions presented involve whether a security interest in the boat should be accorded priority, and whether a breach of warranty occurred.

In March 1973 Charles Allen, a resident of Berks County, Pennsylvania, bought a twenty-four foot motor boat from King Koach Marine Sales of Delaware County, Pennsylvania. Appellant, Westinghouse Credit Corp., financed the

purchase price of $9,500 by a conditional sales contract, under which Westinghouse took a secured interest in the boat. In April 1973 Westinghouse filed a financing statement in the Office of the Prothonotary for Berks County.

In May 1973 King Koach delivered the boat to Allen at a marina in North East, Maryland. In October 1973 Allen sold the boat to appellee, Lawrence Wind, at a Maryland marina. Shortly thereafter, Wind moved the boat to a different marina, also in North East, for maintenance and winter storage. In November 1973 Bernard King, the proprietor of King Koach, and a representative of Westinghouse came to the second marina in Maryland, took possession of the boat, and returned it to the King Koach sales premises in Pennsylvania.

On Wind's action in replevin, the lower court held Westinghouse's secured interest unperfected in Maryland and therefore subordinate to Wind's rights, and awarded Wind possession of the boat. On a cross-claim by Westinghouse against King Koach, the lower court held that King Koach had not breached a warranty contained in its non-recourse agreement with Westinghouse, and therefore that King Koach was not liable to Westinghouse for the value of the security interest. This appeal questions both rulings.

## I. Wind v. Westinghouse

A. Choice of Law

■ Westinghouse argues that the lower court erred in applying Maryland law to determine the priorities between Wind and Westinghouse. We disagree.

We need not decide whether, under Pennsylvania law of choice of law, Maryland or Pennsylvania law should govern the initial determination of the applicable law on perfection and priorities, for both states have enacted § 9–103 of the Uniform Commercial Code, which provides in relevant part:

(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by

the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.

12A P.S. § 9–103 (1970); 95B Maryland Annot.Code, Art. 95B, § 9–103 (1964).[1]

1. Westinghouse argues that § 9–103(3) cannot apply to this case, because at the time of the replevin action the boat was in Pennsylvania and therefore was not the kind of collateral covered by subsection (3), that is "[c]ollateral . . . brought into this State subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction." U.C.C. Comment 7, § 9–103. This misses the point that the rights of the parties should be determined, not according to their relative status at the place to which Westinghouse as repossessor took the collateral—for if that were so, a repossessor could "shop" for his rights by choice of jurisdiction—but rather according to their status at the time and place that the collateral was repossessed. *See* Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code,* 68 Mich.L.Rev. 684 (1970).

Applying § 9–103 to the facts of this case: Westinghouse's. security interest in the boat, perfected under Pennsylvania law ("already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state"), was also perfected under Maryland law for four months ("continues perfected in this state for four months"), but was perfected in Maryland after the four-month period only if Westinghouse perfected it in Maryland according to Maryland law ("and also thereafter if within the four month period it is perfected in this state").[2] If the security interest was not re-perfected in Maryland, it became unperfected at the end of the four-month period. *See Re Dumont-Airplane & Marine Instruments, Inc.,* 203 F.Supp. 511 (D.C.N.Y.1962); U.C.C. § 9–103, 1972 Amendments, in Anderson, Uniform Commercial Code (Cum.Supp.1970–1974) at 1074–76.[3]

B. Maryland Law on Perfection and Priorities

Under Maryland law, Westinghouse was required to file a financing statement in order to perfect its security interest:

Westinghouse argues alternatively that subsection (4) should apply rather than subsection (3); this argument is discussed below.

2. That the perfection after the four-month period must be under Maryland's law of perfection, rather than Pennsylvania's, is made clear by U.C.C. Comment 7, § 9–103: "After the four month period the secured party must comply with the perfection requirements of this Article (*i.e.,* must file if filing is required)."

3. Neither Pennsylvania nor Maryland has enacted the 1972 Amendments to § 9–103; the amendments are nevertheless instructive as to the correct interpretation of the existing Pennsylvania and Maryland § 9–103.

The Official Comment to the amendments notes: "While most of the substantive materials of the [amended] section are in the 1962 Text, the statement thereof and their relationship to each other were not clear. In the revision they are clarified according to the following structure: . · . . Where the collateral has been removed from the jurisdiction whose law first governed, the jurisdiction into which it is removed (i. e., "this state") adds a local requirement of reperfection to the requirements of the state from which the collateral was removed—i. e., refiling is required within 4 months after removal . · . ·."

A financing statement must be filed to perfect all security interests except the following:

. . . . .

(d) a purchase money security interest in consumer goods having a purchase price not in excess of $500.00 . . .

Maryland Annot.Code, Art. 95B, § 9–302(1).[4]

There is no dispute that Westinghouse filed no financing statement in Maryland; therefore, after the running of the four-month period during which Westinghouse's interest remained perfected in Maryland, the interest was unperfected.[5] By application of § 9–301 of the Code, Westinghouse's unperfected security interest is subordinate to the rights of Wind, who is a buyer not in the ordinary course of business who gave value and received delivery of the collateral without knowledge of the security interest and before it was perfected (or, more accurately in this case, before it was re-perfected).

C. § 9–103(4)

Appellant argues that subsection (4) of § 9–103 should govern rather than subsection (3). Subsection (4) provides:

4. Westinghouse points to the difference in Pennsylvania's § 9–302, which exempts from the filing requirement all purchase money security interests in consumer goods, without purchase price restriction. 12A P.S. § 9–302(1)(d). This observation is irrelevant, however; as noted above, note 2, the re-perfection in Maryland must be according to Maryland law.

5. In its brief Westinghouse states that the boat was delivered to Allen in Maryland "in approximately June, 1973." Appellant's Brief at 4. This statement raises the possibility—not pursued by appellant on appeal—that Wind bought the boat within the four-month period during which the security interest remained perfected, and therefore that he bought subject to the security interest. *See First Nat'l Bank of Bay Shore v. Stamper*, 93 N.J.Super. 150, 225 A.2d 162 (1966); *Newton-Waltham Bank & Trust Co. v. Bergen Motors, Inc.*, 68 Misc.2d 228, 327 N.Y.S.2d 77 (1971). However, Westinghouse stipulated that the boat had been docked at the Maryland marina in May 1973, R. 134a, and presses no contention that this was not the time when the boat was brought into Maryland. The lower court found as a fact that the boat was brought into Maryland in May. Lower court opinion at 5.

(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

This argument fails because there is no statute, either in Pennsylvania or in Maryland, that requires "indication on a certificate of title of any security interest in the property was a condition of perfection."

Appellant cites no such Pennsylvania statute, nor has our research disclosed any. Appellant does insist that the Maryland Boat Act, Maryland Annot.Code, Art. 14B,[6] provides the necessary requirements to bring subsection (4) into play. It is true that §§ 4A(a) and 4C of the Boat Act make reference to a requirement that an owner of a vessel principally used on the waters of Maryland secure a certificate of title for the vessel.[7] However, these do not even mention security interests, much less require their indication on certificates of title "as a condition of perfection."[8] It follows that subsection (4) of § 9–103 is not applicable.

6. Subsequent to the events in this case, the Boat Act was re-enacted as part of the Natural Resources title of the Maryland Code, §§ 8–701 *et seq.*

7. § 4A. Certificate of title—Application required; pre-requisite to certificate number.
 (a) Except as provided in § 4B, every owner of a vessel principally used upon the waters of Maryland and required to be numbered by this State as set forth in § 5 of this article shall make application to the Department for a certificate of title for the vessel.
 (b) . . .
 § 4C. Same—sale; assignment or transfer of vessel.
 No person shall sell; assign or transfer a vessel titled by this State without delivering to the purchaser or transferee a certificate of title with such assignment thereon as is necessary to show title in the purchaser or transferee; nor shall any person purchase or otherwise acquire a vessel required to be titled by this State without obtaining a certificate of title for it is in his name.

8. The Boat Act was amended in 1975 to provide for perfection of a security interest in a vessel by recording the interest on the certificate of title required by § 4A(a) (now § 8–715(a)). Maryland Annot. Code, Natural Resources, §§ 8–729 to 732 (Cum.Supp.1977).

We therefore find that the lower court correctly found appellee entitled to possession of the boat.[9]

## II. *Westinghouse v. King Koach*

 Appellant argues that if Wind is entitled to possession of the boat—as we have just held he is—then King Koach is liable to appellant for breach of a warranty contained in the "Dealer Non-Recourse Agreement" that governed the assignment of conditional sales contracts by King Koach to appellant.

In pertinent part, the warranty in question provides: Dealer [King Koach] hereby warrants with respect to each Contract purchased by WCC [Westinghouse] hereunder that . . . (d) it will constitute a valid and binding title retention of or lien upon the merchandise described therein, and the assignment of such Contract to WCC hereunder will vest WCC with full and complete title thereto and valid title to or lien upon the merchandise covered thereby, free from liens, setoffs, counterclaims and other defenses.

R. 15a.

In our view, as in the lower court's, King Koach did not breach this warranty. When King Koach assigned the conditional sales contract to appellant, appellant acquired a valid security interest in the boat. Indeed, appellant still has a valid security interest in the boat; it simply does not

---

**9.** Appellant has made two further arguments that do not merit extended discussion.

Appellant contends that Allen could not sell the boat to Wind, because both Allen and his wife were listed as buyers on the original conditional sales agreement, thus creating an ownership by the entireties that could not be transferred by any one party. However, § 9–301 of the Uniform Commercial Code does not purport to protect only buyers who take good title, but rather any "buyer not in ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected."

Appellant further argues that even granting that Wind was such a protected buyer he should be protected only "to the extent that he [gave] value," § 9–301(1)(c)—here, $3,000. Appellant did not make this argument below; it is therefore waived. *Benson v. Penn Central Transp. Co.,* 463 Pa. 37, 342 A.2d 393 (1975).

have what it would like to have, namely, a valid *and perfected* interest as against Wind. The lack of perfection is not to be held against King Koach, however, for King Koach did not warrant a perfected interest.

Appellant also argues that King Koach breached a common-law warranty owed by an assignor to his assignee, namely, that the assignor will do nothing to defeat or impair the value of the assignment. *See* Restatement of Contracts § 175 (1932); 6 Am.Jur.2d *Assignments* § 107 (1962). It is arguable that by delivering the boat in Maryland and thereby setting in motion the four-month period during which appellant would have to re-perfect its interest in Maryland, King Koach impaired the value of the assignment. However, appellant never raised this claim below, either in its pleadings, or in its exceptions to the findings of the lower court.[10] It is therefore not surprising that King Koach did not attempt to defend against the claim (for example, by proving "circumstances showing a contrary intention," Restatement of Contracts § 175(1)), that the lower court did not pass upon the claim in its findings, and that the court *en banc* did not address the claim in its opinion sur exceptions. In these circumstances we hold that the claim was waived. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

Affirmed.

VAN der VOORT, J., dissents.

**10.** In its New Matter against King Koach, R. 13–14a, Westinghouse generally averred that King Koach was liable to Westinghouse for the value of its security interest; as to a specific averment of breach of warranty, Westinghouse only averred the express warranty contained in the non-recourse agreement.

In its exceptions, R. 138a, Westinghouse filed a general exception to the determination that King Koach was not liable to Westinghouse in damages, while more specifically excepting to the conclusion that King Koach did not breach "its warranty" to Westinghouse. Since the only warranty mentioned by Westinghouse up to this point in the case was the express warranty in the non-recourse agreement, we cannot conclude that the lower court should have understood this exception to refer to the common-law warranty discussed above.