In re Joseph H. TRIVETT, Deborah L. Goulart Trivett, Debtors.

Richard P. JAHN, Jr., Trustee, Plaintiff,

v.

NORTH AMERICAN VAN LINES, Defendant.

Bankruptcy No. 1–80–01164.
Adv. No. 1–80–0343.

United States Bankruptcy Court,
E. D. Tennessee.

June 26, 1981.

Richard P. Jahn, Jr., Tanner, Jahn, Atchley, Bridges & Jahn, Chattanooga, Tenn., for plaintiff.

Kyle R. Weems, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., Gerald A. Burns, Fort Wayne, Ind., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

### Introduction

The defendant, North American Van Lines, is a trucking company doing business in most of the United States. North American regularly sells trucks to drivers who then lease the trucks to it. If a truck is sold on credit, North American retains a security interest. To perfect its security interest North American follows a peculiar course of action. It keeps or has issued an Indiana title certificate showing it as the owner. When the truck is paid for, North American will assign its certificate of title to the buyer. If North American sells the conditional sale contract, then it is shown on the title certificate as owner and the buyer of the contract, or its agent, is shown as first lienholder. That is what happened in this case.

North American has relied on this procedure as perfecting its security interest in a large number of trucks, probably more than a thousand. In this proceeding, the trustee in bankruptcy for a truck buyer contends that North American's procedure did not perfect its security interest.

*Facts*

North American Van Lines is a corporation doing business as a long distance motor freight carrier, in other words, a trucking company. Located around the country are local moving and storage companies doing business under North American's name as its agents. North American owns several thousand trailers which are stationed at various locations around the country.

North American contracts with the owners of tractor trucks to pull its trailers. To find such owner-operators, North American advertises in various publications. North American will also sell trucks to operators who contract with it.

The debtor, Trivett applied to North American, and in July, 1979, he and his brother attended North American's drivers' school at its headquarters in Fort Wayne, Indiana. Trivett was employed by another trucking company and did not own a truck. He decided to buy a truck from North American for his brother to drive. North American agreed to sell him the truck in question, a 1979 GMC tractor.

North American had bought the truck from General Motors in July, 1979. The manufacturer's certificate of origin was assigned to it. Before it agreed to sell the truck to Trivett, North American applied for an Indiana certificate of title in its name as owner and with no liens noted. North American does not wait for a sale and then apply for a title certificate in the buyer's name. If North American waited for a sale before applying for an Indiana title certificate, it might be liable for a penalty for using an old certificate of origin in its application.

Furthermore, when North American sells a truck on credit, it keeps the Indiana title certificate in its name as owner until the truck is paid for. When a truck is paid for, North American assigns the title certificate to the owner-operator. There was testimony that after a truck is paid for, in some cases the nonresident owner will obtain an Indiana certificate by giving North American's address as his residence.

North American and Trivett executed the conditional sale contract on August 2, 1979. Trivett was a resident of Tennessee and had been for most of the preceding eleven years. Under the contract, Trivett agreed to make 260 weekly installment payments to North American and gave it a security interest in the truck to secure payment.

The sales contract provides that its validity and construction shall be determined under Indiana law. In paragraph 4 the contract also provides:

(b) Secured Party may cause, at its option, the certificate of title to the collateral to be issued in the name of Secured Party: It is specifically agreed between Secured Party and Debtor that issuance of the certificate of title in the name of Secured Party is for the mutual benefit of Secured Party and Debtor.

On the same day that they executed the conditional sale contract, the debtor leased the truck to North American. In the lease the debtor is the Contractor and North American is the Carrier. For convenience the court has inserted Debtor and North American in the relevant provisions quoted below.

(1) Tractor Unit(s). Debtor agrees to furnish, and hereby leases to North American for [its] exclusive use, possession, and control to the extent required by law, and rules and regulations thereunder, the tractor unit(s) described and identified in the "Schedule of Equipment" . . . .

. . . .

(4) Use of Vehicular Equipment. Debtor agrees to use said equipment exclusively in the business and service of North American to the extent required by applicable law and rules and regulations thereunder . . . and to comply fully with applicable rules, regulations, and instructions of the Interstate Commerce Commission and the Department of Transportation. The parties agree that the Debtor shall have the right to trip lease with other carriers subject to North American's authorization as required by, and in accordance with, all applicable laws and regulations thereunder.

. . . .

(8) Vehicle Operation Expenses and Requirements. (a) Debtor agrees to assume responsibility for and pay all operating costs and expenses . . . including . . . base plates and licenses . . . . Debtor specifically agrees to purchase an Indiana base plate and Arizona prorate permit for each covered tractor unit covered hereunder. (b) Upon termination of this Agreement by either party . . . Debtor agrees to reimburse North American for the cost of unexpired portions of all permits, plates, and licenses furnished by North American . . . . Debtor further agrees that the unexpired portions of all permits, plates, and licenses . . . shall become, upon termination, the property of North American; provided however, that where title to said tractor unit(s) is not registered in North American's name, the Indiana base plate shall not become the property of North American.

. . . .

(13) Repayment of Charges. (a) Debtor agrees that compensation for services performed may be offset or withheld for . . . tractor payments . . . .

(21) Commencement and Termination. (a) Debtor and North American agree that the term of this agreement shall be for thirty (30) days commencing on the day and date first mentioned, and shall continue in effect thereafter subject to termination by either party upon thirty (30) days written notice . . . .

(22) Debtor and North American agree that this Agreement shall supersede and replace any other like agreements between said parties, and that this Agreement is made in and shall be construed under the laws of Indiana.

The lease obligated Trivett to obtain an Indiana "base plate", that is, an Indiana license plate reflecting Indiana registration. Trivett was also required to obtain an Arizona prorate permit. North American purchased these at a total cost of about $425 and agreed to let Trivett repay it in installments over twenty weeks without interest.

North American did not assign its certificate of title to Trivett. It applied for another Indiana certificate showing it as the owner and the Fort Wayne National Bank as first lienholder. This was the only outstanding certificate of title when Trivett filed his bankruptcy petition on June 11, 1980.

The Fort Wayne bank is the escrow agent for a New York bank that furnishes North American a line of credit. North American sells some of the "chattel paper" from its truck sales to the New York bank.[1] The banks and North American agreed for the Fort Wayne bank to hold the title certificates so that North American would have easy access to them.[2] The chattel paper from the sale to Trivett was sold to the New York bank, and so a title certificate was obtained showing the Fort Wayne bank as first lienholder.

North American is responsible for making payments on the assigned contracts. In one month the bank will release up to fifty titles on request by North American. The trucks need not have been completely paid for. One witness testified that the bank trusts North American's credit for up to fifty titles.

North American is the New York bank's agent to make collections from the truck buyers. The New York bank may undertake collections directly from the buyers if North American defaults or when it is reasonable to do so.

North American keeps the title certificates in its name for its and the owners' convenience. Most of North American's trailers are registered in Indiana. If an owner registered his truck in another state, he might be required to obtain a trip permit on entering a state. Under the present

1. Chattel paper is defined in § 9–105(1)(b) of the Uniform Commercial Code in Tennessee and Indiana as a writing or writings evidencing both a security interest and a sale of goods.

2. Apparently, in Indiana a certificate of title is delivered to the first lienholder shown on the certificate. Ind.Code § 9–1–2–1; *Champa v. Consolidated Finance Corp.*, 110 N.E.2d 289 (Ind.1953).

arrangement, North American obtains all the necessary permits in advance. It could not do that without matching registrations for the trucks and trailers. As the registered owner of the trucks, North American also makes the fuel tax returns that the owner-operators would otherwise have to make. In dealing with authorities in the various states, the owner-operators are treated as representatives of North American, a large and reputable company, rather than as individual owners.

If Trivett had bought a Tennessee base plate, it would have cost him over $500 more than the Indiana base plate, and he would have had to pay cash. North American usually buys the Indiana base plate and Arizona prorate permit and allows the truck buyer to repay it in twenty weekly installments without interest. The buyer also does not have to pay a certificate of title fee since North American will keep the title in its name as owner.

There was some unclear testimony that if an owner-operator wants to sell his truck, the buyer has some advantages because of the Indiana registration or title. Also, owner-operators who are indebted to North American can obtain collision insurance at favorable rates under North American's group policy. Some owners who have paid for their trucks even borrow small amounts from North American so that they can continue under the group policy. This insurance was referred to as an advantage flowing from the titling arrangement in question. But there was no testimony that North American must be the record owner of a truck in order for the owner-operator to qualify, only that he must be indebted to North American. Thus it is not clear what advantages as to insurance and sales an owner-operator gains from having his truck titled to North American.

It is clear that North American as a secured party has the advantage of dealing with one state's law and bureaucracy in perfecting its security interests. In secured sales of motor vehicles, wise sellers usually apply for the title certificates rather than relying on the buyers to do so. North

American is saved the trouble of making applications around the country.

Finally, the New York bank that supplied North American the line of credit relies on this arrangement as perfecting its and North American's security interest. In fact, North American requested and obtained an opinion from the Attorney General of Indiana that it is proper for a secured party to have a title certificate issued to it as owner.

As required by the lease, North American furnished Trivett a trailer for use with the truck. For several months Trivett's brother, or someone other than Trivett, operated the truck. There was no evidence as to where he kept the truck when it was not in use. In January, 1980, Trivett began driving the truck. When it was not in use, he kept it at or near his home in Tennessee. He received his orders from North American's headquarters in Fort Wayne, Indiana.

Trivett did not use the truck or trailer to haul freight for anyone other than North American, though the lease allowed trip leasing subject to North American's approval.

The lease identifies North American as a carrier operating under authority from the Interstate Commerce Commission. Quoted below are certain Interstate Commerce Commission regulations applicable to the arrangement between the debtor and North American.

The regulations appear in 49 C.F.R.
§ 1057.2 Definitions
. . . .

(d) *Owner.*—A person (1) to whom title to equipment has been issued, or (2) who, without title, has the right to exclusive use of equipment for a period longer than 30 days, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person.
(e) *Lease.*—A contract or arrangement in which the owner grants the use of equipment . . . for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation.

(f) *Permanent Lease.*—A lease in which the authorized carrier acquires the use of equipment . . . from an owner for a period of 30 days or more.

(g) *Trip Lease.*—A lease in which an authorized carrier acquires the use of equipment . . . from an owner for a period of time less than 30 days.

. . . .

§ 1057.11  General leasing requirements.

. . . [T]he authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions:

(a) *Lease.*—There shall be a written lease granting the use of the equipment and meeting the requirements [of] § 1057.12.

. . . .

§ 1057.12  Written lease requirements.

. . . [T]he written lease required under § 1057.11(a) shall contain the following provisions:

. . . .

(c) *Minimum duration of 30 days when operated by owner.*—The period for which the lease applies shall be for 30 days or more when the equipment is to be operated for the authorized carrier by the owner . . . .

(d) *Exclusive possession and responsibilities.*—The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. . . .

. . . .

Certain Indiana statutes are relevant. They are set out below as they appear in Ind.Code.

§ 26–1–9–302

. . . .

(3) The filing provisions of this article do not apply to a security interest in property subject to a statute

. . . .

(b) of this state which provides for central filing of security interests in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if notation of such security interest can be indicated by a public official on a certificate or a duplicate thereof.

(4) A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under the statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.

§ 9–1–1–2

. . . .

(*o*)  Owner.—A person who holds legal title of a motor vehicle or any person renting or leasing a vehicle and having exclusive use thereof for a period longer than thirty (30) days, or in the event a vehicle is the subject of an agreement for the conditional sale or lease vested in the conditional vendee or lessee, or in the event the mortgagor thereof, with the right of purchase upon the performance of the conditions stated in the agreement and with an immediate right of possession of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed to be the owner for the purpose of chapters 1 through 4 [9–1–1–1—9–1–4–60] of this article.

. . . .

§ 9–1–4–1

Vehicles to be registered.—Except as herein otherwise provided, before any motor vehicle, . . ., truck, trailer, . . . shall be operated or driven on any public highway, the owner thereof shall register the same with the department as herein provided.

§ 9–1–4–2

Application for registration—Form—Contents—Branch distributing office—Service charge.—(a) Every person, who is the owner of a vehicle of the type to be registered hereunder, shall apply to a branch office . . . in the county in which said owner is a resident, for and obtain, the registration of such vehicle . . . .  Every such application shall bear the signa-

ture of the owner written with pen and ink and the application shall contain: (1) The name, bona fide residence and mail address, including the name of the county, of the owner or the business address ... if a ... corporation ....

....

§ 9–1–1–2

Certificate of title—Lawful owner—Procedure—Refusal to issue—Unlawful to operate without certificate.—No certificate of registration ... may be issued ... by the department, unless the applicant ... shall at the same time, make application for, and be granted, an official certificate of title for such motor vehicle ... or shall present satisfactory evidence that such certificate has been previously issued to the applicant ....

... The department shall use reasonable diligence in ascertaining whether or not the facts stated in the application ... are true, and if satisfied that the applicant is the lawful owner of such vehicle, or is otherwise entitled to have the same registered in his name, the department may thereupon issue an appropriate certificate of title ....

....

The certificate shall be delivered to the owner in the event no lien or encumbrance appears thereon. Otherwise the certificate ... shall be delivered to the person named to receive [it] in the application .... [T]he commissioner is hereby authorized to collect a delinquent title fee ... in case the application for an original certificate ... or a transfer thereof, by assignment, is not made by the purchaser or transferee, within ten [10] days after the vehicle is purchased or otherwise acquired .... All persons, applying for certificate of title, shall be required to make application for registration of the vehicle ... or transfer the current registration ... to prove to the satisfaction of the department that such vehicle is not to be operated upon the public highways until [it] is properly registered.

....

Except as provided in IC 9–1–4–11 [repealed], it shall be unlawful to operate or permit to be operated upon the public highways, a motor vehicle ... under an Indiana registration number, unless a certificate of title shall have been issued as herein provided.

§ 9–1–2–2

Transfer of certificates of title—Transfer by persons in the armed forces.—(a) In the event of the sale or transfer of ownership of such vehicle, for which an original certificate of title has been issued heretofore, the original holder of such certificate shall endorse on the back of the same an assignment thereof, with warranty of title, in a form printed thereon, with a statement of all liens or encumbrances on such vehicle. The failure of the seller to deliver to the purchaser, at the time such vehicle is sold or delivered, a proper certificate of title with an assignment thereof in the form prescribed by the commissioner or in the form approved by him, if the title has been acquired or registered in [another] state, is a class B misdemeanor....

The "Multistate Reciprocal Agreement Governing The Operation of Interstate Vehicles" also applies to the facts in this case. The relevant provisions are quoted below.

I—Purpose and Principle

A. *Purpose of Agreement.* It is the purpose of this agreement to grant reciprocity ... to contracting jurisdictions ... by the exemption from registration and payment of all fees and taxes in each other contracting jurisdiction when such vehicles are used in any type of interstate vehicle operation in any such other contracting jurisdiction.

B. *Principle of Agreement.* In making this agreement, the contracting jurisdictions adhere to the principle that reciprocal benefits and privileges should not be limited or restricted to the single residence, single place of business, or state of incorporation of the owner, lessee, vendee, mortgagor, or carrier, as applied to commercial vehicles. As a prerequisite in determining whether or not to extend

reciprocal benefits and privileges, recognition shall first be given to where or in which jurisdiction does the vehicle have a base; and second, is the vehicle properly registered and/or licensed in that same contracting jurisdiction.

## II—Applicability

This agreement shall apply on to the following persons, firms or corporations operating vehicles as follows:

A. To privately owned and operated passenger vehicles properly licensed in the jurisdiction of the owner's bona fide residence.

B. With respect to all other vehicles, only to persons, firms and corporations maintaining a place of business in either one or more of the reciprocating jurisdictions.

C. Maintenance of a place of business in one of the reciprocating jurisdictions shall entitle the owner to operate a vehicle, properly licensed in the jurisdiction in which such business is located, between said jurisdiction and the other jurisdictions party hereto. The maintenance of a place of business in more than one of said jurisdictions shall entitle the owner to operate a vehicle which has been properly licensed [in] the jurisdiction in which the vehicle is based, between such jurisdiction and the other jurisdictions party hereto.

## III—Definitions

A. *Place of Business.* A place of business shall mean the place or location in a jurisdiction, where the operating carrier or person operating the vehicle has a terminal, warehouse, office, garage or some permanent bona fide address at which an employee reports and performs regular and continuing service for the operating carrier or person . . . .

B. *Base.* The term base shall mean the place where the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled; or, in the case of a vehicle, the jurisdiction to which it is allocated for registration under statutory require-

ments. The owner . . . or carrier . . . shall designate the jurisdiction in which he considers the vehicle based, but, such carrier must have a place of business at such location and must use the vehicle in connection with such place of business.

2. The motor vehicle administrators . . . shall agree as to the base of the vehicle, but must, in determining the vehicle's base, give consideration, among other things, to the place from which the vehicle leaves and to which it returns in its normal operations.

C. *Properly Registered or Licensed.* 1. The jurisdiction where the person registering the vehicle has his legal residence, or

2. In the case of a commercial vehicle, including a leased vehicle, the jurisdiction in which it is registered, if the commercial enterprise in which such vehicle is used, has a place of business therein, and, if the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled in or from such place of business, and, the owner and/or lessee has assigned the vehicle to such place of business, or

. . . .

## V.—Miscellaneous Provisions

. . . .

E. *Responsibility of Jurisdiction when Registering and/or Licensing Vehicles.* 1. Each jurisdiction party to this agreement assumes the responsibility of determining whether or not the owner or lessee has place of business in the jurisdiction. In those cases where a vehicle is not based and the owner or lessee does not have a bona fide place of business in the jurisdiction, the registering administrator or official shall refuse to register such vehicle in such jurisdiction.

. . . .

## Discussion

Bankruptcy Code § 544(a) gives the trustee in bankruptcy the rights of a judgment lien creditor of the debtor as of the date the bankruptcy petition is filed. 11 U.S.C.

§ 544(a). Under Uniform Commercial Code (UCC) § 9–301(1)(b), the trustee's rights as a judgment lien creditor are superior to an unperfected security interest in the debtor's property. Tenn.Code Ann. § 47–9–301(1)(b).

The question is whether North American's security interest in the truck was perfected at the time of Trivett's bankruptcy. If not, then the trustee is entitled to the value of the truck at that time.

In Tennessee and Indiana, security interests in motor vehicles generally are perfected by compliance with the certificate of title law. Tenn.Code Ann. § 47–9–302(3)(b) & (4); *In re Vaughn,* 283 F.Supp. 730 (M.D. Tenn.1968) (inventory held for sale); Ind. Code § 26–1–9–302(3)(b) & (4). North American's security interest in Trivett's truck was not perfected by compliance with the Tennessee certificate of title law. North American did have an Indiana certificate of title issued. In that regard, § 9–103(4) of the Tennessee UCC provides:

> (4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

Tenn.Code Ann. § 47–9–103(4).

When the only outstanding certificate of title is one issued by another state, there are three requirements for perfection under § 9–103(4).

The first requirement is not explicit. The statute appears to say that perfection under the certificate of title law of any state is effective in Tennessee without regard to whether the property was subject to the laws of the other state. If read that way, the subsection would be an unusual conflict of laws rule. By contrast, subsections (2) and (3) are more typical. Subsection (4) should be read to mean that "the certificate must have been issued ... by a 'jurisdiction' which had power to do so." 1

G. Gilmore, Security Interests in Personal Property § 10.10 at 327 (1965).

In any event, the trustees's arguments do not seriously challenge Indiana's power. The court thinks that Indiana had the power to subject this truck to its certificate of title laws. See *General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774, 4 U.C.C. Rep.Serv. 1016 (5th Cir. 1968); *In re Canter,* 8 U.C.C.Rep.Serv. 252 (Bankr.Ct.E.D. Tenn.1970). But see *In re Dawson,* 21 U.C.C.Rep.Serv. 293 (Bankr.Ct.E.D.Mo.1976) (Contacts don't matter.); *In re Brown,* 5 U.C.C.Rep.Serv. 401 (Bankr.Ct.W.D.Mich. 1968) (sub. 4 construed in light of subs. 2 & 3).

The questions arise under the second and third requirements for perfection under § 9–103(4):

> (2) Under the law of the state that issued the certificate, perfection of the security interest must have required its indication on the certificate of title.

> (3) The security interest must be perfected under the certificate of title law of the state that issued the certificate.

The two requirements cannot be considered entirely separate. Nevertheless, the court will attempt to deal with the third one first. If North American's security interest was not perfected under Indiana law, then it was not perfected in Tennessee.

*Perfection Under Indiana Law*

The trustee argues that North American could have perfected its security interest under Indiana law only by having issued a title certificate showing Trivett as owner and North American as lienholder.

The argument focuses on the title certificate as a proof of ownership, rather than as a means of giving notice of a security interest. Perfection of a security interest generally depends on notice that the secured party has an interest in the property. J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code § 23–5 at 918–919 (2d ed. 1980). Obviously, the Indiana certificate of title gave notice that North American had some interest in the truck.

The recent decision in *In re Circus Time, Inc.* is illustrative. The court of appeals held that Grumman Credit Corporation's security interests in six vans were perfected by having issued title certificates showing Grumman as the owner. Grumman was not within the definition of "owner" and not entitled to have the certificates issued to it as owner. The court reasoned that perfection under the certificate of title laws should depend on notice, the certificates gave notice that Grumman had an interest in the vans, and issuance of the certificates to Grumman as owner was not contrary to the goals of the certificate of title law. 641 F.2d 39 (1st Cir. 1981) rev'g 5 B.R. 4 (Bankr. Ct.D.Maine 1980). (*Circus Time, Inc. v. Grumman Credit Corp.*) Thus, Grumman's security interests were perfected by issuance of the title certificates to it as owner, even though that was not allowed by the certificate of title law.

■ It appears that North American followed the same course as Grumman. North American had the title certificate for Trivett's truck issued to it as owner on the theory that Indiana law allows a secured party to have a title certificate issued to it as owner if the debtor agrees. Despite an opinion of the Attorney General of Indiana to that effect, the court is not certain that is the law. But the court need not address the question directly if under Indiana law, North American could have had the title certificate issued to it as a *lessee.*

The definition of owner in the Indiana title and registration law has three provisions. It provides first that the holder of legal title is the owner. Secondly it provides that owner means a person renting or leasing a vehicle and having exclusive use thereof for a period longer than thirty days. The third provision says that a mortgagor, a conditional vendee, or a lessee, with the right to purchase on completion of the lease, is the owner if he is entitled to immediate possession of the vehicle.[3] Ind.Code § 9–1–1–2(*o*).

A lessee entitled to exclusive use of a vehicle for a period longer than thirty days is the owner. This same definition of owner is used in the ICC regulations. The term of the lease was thirty days and thereafter until termination by either party on thirty days written notice to the other. This provision satisfies one ICC regulation, but it is not clear that it was meant to satisfy the ICC definition of owner. 49 C.F.R. §§ 1057.11(a), 1057.12(c) & (d), 1057.2(d)(2). Nevertheless, the court concludes that the lease was for a period longer than thirty days.

It appears that notice of termination could not have been given so that the lease would last for only thirty days. Even if the lease allowed notice to be given on the first day, thirty full days notice would have made the lease run for thirty-one days. See *Liberty Service, Inc. v. McKim,* 129 Ind. App. 464, 157 N.E.2d 582 (1959); *Mathews Farmers' Mut. Live Stock Ins. Co. v. Moore,* 58 Ind.App. 240, 108 N.E. 155 (1915).[4] Regardless of the right to terminate on notice, the lease was for thirty days *and thereafter.* The lease was not terminated at the time of Trivett's bankruptcy, more than ten months after it was entered into. Furthermore, Trivett's income under the lease was for North American a source of installment payments on the truck. It is clear the parties intended a lease for more than thirty days.

The lease also satisfied the exclusive use requirement. The trip leasing provision did not nullify North American's exclusive use, since trip leasing was subject to North American's approval. Exclusive *use* does not mean North American had to have

---

3. This part of definition is concerned with lessees under lease-purchase agreements. *Transport Rentals, Inc. v. Carpenter,* 325 S.W.2d 745 (Mo.1959). See UCC § 1–201(37) on leases intended for security. Neither Trivett nor North American was a lessee-purchaser.

4. The headnote to another case says that notice on March 2 for payment on April 1 was 30 days notice. *Fox v. Allensville, C.S. & V. Turnpike Co.,* 46 Ind. 31 (1874). Probably the day of notice was excluded and the day of payment was included. See *Bulldog Concrete Forms Sales Corp. v. Taylor,* 195 F.2d 417 (7th Cir. 1952).

physical possession of the truck to the exclusion of Trivett. Such a rule would not make sense in the leasing context. The court concludes that North American was the "owner" of the truck under the second provision of the definition.

That brings the court to a serious problem of statutory interpretation. The problem indirectly involves the question of whether North American legally could have had the title certificate issued to it as owner because it was a secured party.

If the second provision of the Indiana definition is taken out, then the Indiana definition is like the Tennessee definition.[5] The Tennessee definition or the first and third parts of the Indiana definition state a general rule and an exception. Since the adoption of the UCC, the language is not appropriate but the intent is clear.[6] The owner is the holder of legal title, unless he holds it for security and the debtor will have possession of the vehicle; then, the debtor is the owner. It appears that these two provisions are meant to make a certificate of title reflect the true positions of the parties. The debtor who is the true owner and has possession will be shown as owner, and the holder of legal title, who actually has only a lien, will be shown as a lienholder. See *Milbank Mutual Ins. Co. v. Wentz*, 352 F.2d 592 (8th Cir. 1965). If this interpretation of the statute is correct, the court hesitates to agree with the Indiana Attorney General's opinion, though it depends partly on another statute.[7] See also Ind. Code § 9-1-2-2; *National Bank & Trust Co. v. United States*, 589 F.2d 1298 (7th Cir. 1978).

In any event, the court's problem is that under the first and third parts of the Indiana definition, Trivett was the owner of the truck. Trivett was entitled to and had actual possession of the truck. The lease did not change that. It contemplated that Trivett would have actual possession despite the provision giving North American exclusive use and possession. Thus the definition allows two owners, North American or Trivett.

The trustee's argument is that the purposes of the certificate of title law will be better served if Trivett is held to be the owner. The trustee in effect wants the court to hold that when the debtor, rather than the secured party, is the owner under the first and third parts of the definition, then the secured party cannot be the owner under the second "lessee" part of the definition.

The court should look first to the purpose behind the lessee part of the definition in light of the general purposes of the certificate of title law.

The court has not been directed to any in-depth legislative history of the lessee part of the definition.[8] North American repeatedly emphasized that it is important for truck and trailer registrations to match. North American did not point out any statutes or regulations that make it important, but there was testimony that it makes business more convenient for North American and the truck owners.

---

5. Section 55-1-112(b) of the Tennessee Code defines owner as—

a person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of chapters 1-6 of this title.

6. Under the UCC, reservation of title for security creates a security interest, and title passes to the purchaser. See UCC §§ 1-201(37) & 2-401(1).

7. It provides that a title certificate will be issued to the lawful owner or a person otherwise entitled to have the vehicle registered in its name. Ind.Code § 9-1-2-1. The court is not certain what is meant by *lawful* owner as opposed to owner under the definition.

8. It was part of the definition of owner in an Indiana statute establishing a repairman's lien for repairs done at the owner's request. *Champa v. Consolidated Finance Corp.*, 110 N.E.2d 289 (Ind.1953).

The trustee argues that it was unnecessary for North American to obtain an Indiana certificate of title so that it could register the truck in Indiana, because the reciprocity agreement allowed Trivett to register the truck in Indiana.

The reciprocity agreement generally provides that if its requirements are met, a vehicle properly registered in one of the contracting states need not be registered in the others. However, the reciprocity agreement does not supersede all of the requirements for registration in Indiana. It is not clear that Trivett could have legally obtained an Indiana certificate of title or registration. Trivett was not a resident of Indiana. The Indiana statutes contemplate that only residents must obtain an Indiana registration, and therefore only residents are required to obtain an Indiana certificate of title. Ind.Code §§ 9–1–4–2 & 9–1–2–1; *In re Dawson*, above.

By using North American's address, some nonresident owners may have illegally obtained Indiana title certificates in their names as owners. But North American was not required to follow that course of action, particularly since, according to the Attorney General of Indiana, North American as a secured party could have title certificates issued to it as owner. North American obviously was a resident of Indiana. See *State v. Tustin*, 322 S.W.2d 179 (Mo.App.1959).

The effect of the lessee part of the definition should be evident. The trustee and North American noted in their briefs that Indiana is the base of operations for several interstate trucking companies. As a practical matter, the lessee provision means that a lessee trucking company can be the "owner" of a truck belonging to a nonresident operator. As owner, the trucking company can obtain an Indiana certificate of title which it can use to register the truck in Indiana. Under the reciprocity agreement, the contracting states will in most cases treat the Indiana registration as proper. The lessee provision also tracks the defini-

tion of "owner" in the ICC regulation. 49 C.F.R. § 1057.2(2).[9] Being the owner under Indiana law makes business more convenient for interstate trucking companies operating from Indiana.

Certificate of title laws have a broader purpose than convenience for trucking companies. Registration acts, originally passed for revenue, proved to be useful as anti-theft acts. Certificate of title acts evolved from them. 1 G. Gilmore, Security Interests in Personal Property § 20.1 (1965). Certificate of title acts generally are meant to require one official document that indicates who owns or has an interest in a vehicle. See *Loye v. Denver United States National Bank*, 341 F.2d 402 (10th Cir. 1965); *In re Friedman*, 4 UCC Rep.Serv. 890 (Bankr.Ct.D.Conn.1967).

█ It is not clear that the general policy of the certificate of title law will be seriously weakened if a secured party can have the title certificate issued to it as owner under the lessee part of the definition. A certificate of title is meant to be a reliable indicator of who has an interest in a vehicle. But it is not a negotiable instrument. People buy vehicles, not certificates of title. In Indiana a certificate of title is evidence of ownership but not conclusive proof. A purchaser may not take title free of the owner's rights even if not shown by the title certificate. *Central Finance Co. v. Garber*, 121 Ind.App. 27, 97 N.E.2d 503 (1951).

█ Possession cannot be overlooked as evidence that the possessor has an interest in the vehicle. Trivett's possession of the truck served to give notice that he might have an interest in it. See *In re Circus Time, Inc.*, above.

█ As to third parties, it cannot be assumed that North American could have misled them to their detriment by obtaining a clean certificate of title. Since Trivett was a contractor with and apparent employee of North American, his possession might not arouse a third party's suspicion. But

---

**9.** Apparently the ICC definition includes lessees so that the regulations will cover subleas-

ing. See generally 49 C.F.R. §§ 1057.11 & 1057.12.

Trivett agreed that North American could have the certificate issued to it as owner. He put North American in the position to mislead others. Between Trivett and innocent third parties, Trivett should bear the risk of North American's wrongdoing. *Champa v. Consolidated Finance Corp.*, 110 N.E.2d 289 (Ind.1953); *Fryer v. Downard*, 134 Ind.App. 226, 187 N.E.2d 105 (1963).

It would be better if the Indiana statutes required identification of a lessee "owner" as a lessee or required indication of the lessor or true owner. But the lack of any such requirement says little on the question before the court. The underlying purposes of the certificate of title law do not demand a conclusion that only Trivett could be the "owner".

There are some problems in making the lessee rule mesh with other provisions of the certificate of title law.

When an Indiana certificate of title has been issued, the statute requires the seller of the vehicle to transfer the title to the buyer by executing the assignment on the certificate. Failure to do so is a misdemeanor. Ind.Code § 9–1–2–2. North American failed to meet this obligation as a seller.

Nothing in the Indiana law prohibited North American from assigning the certificate to Trivett and using it, along with the lease, to have an Indiana title certificate issued to it as a lessee-owner. Under that procedure at least the records would have reflected that Trivett was the true owner of the truck. North American took a shortcut by not assigning its certificate to Trivett. But its failure to do so does not mean it could not have had the certificate issued to it as a lessee-owner.

█ That leaves the question of whether North American's security interest was perfected by issuance of the certificate to it as owner. Perfection depends on compliance with the certificate of title law. Ind.Code § 26–1–9–302(3)(b) & (4). It provides that liens shall be noted on the title certificate. Ind.Code § 9–1–2–2. That brings to light another problem in making the lessee provision mesh with the rest of the law.

If a lessee-secured party must have its lien noted, it can be argued that it should not be allowed to have the certificate issued to it as owner. The court, however, has already decided that a lessee can be the owner even if it is a secured party and the debtor is the owner under the other parts of the definition. When the lessee is the owner and a secured party, the statute should be read as requiring notation of other liens.

The court believes that issuance of the certificate to North American as owner perfected its security interest. Being shown as owner gave notice that North American had an interest in the truck. That should be sufficient for perfection of its security interest. As the court interprets the Indiana law, it does not require exact identification of a lessee-owner's interest in a vehicle. It also does not require identification on the title certificate of the lessor or another who is the true owner.

Since North American was entitled to issuance of the certificate to it as a lessee-owner, it makes no difference that it had the certificate issued to it as owner on another theory. Furthermore, North American's failure to assign its certificate of title to Trivett did not cause its security interest to be unperfected. If North American had strictly complied with the law, the motor vehicle records would have shown that Trivett was the true owner of the truck and North American a lessee. But the title certificate still would not have shown that Trivett had any interest in the truck. The court and the trustee are concerned with what a stranger to the situation might immediately discover from the title certificate and the obvious facts, not what he might find out from an investigation of the motor vehicle records. The court cannot say that perfection of North American's security interest depended on Trivett's being shown on the certificate of title as owner or otherwise.

### Indication on the Title Certificate

That brings the court to the second requirement for perfection under UCC § 9–

103(4). The Indiana law had to require indication of the security interest on the certificate of title as a condition of perfection. Typically a state law may fail to meet this test in one of two ways—either indication on the certificate is not the exclusive method of perfection, or the vehicle was not subject to the state's certificate of title law and so no certificate was required. See, e. g., *In re Dobbins*, 371 F.Supp. 141 (D.Kan.1973); *Wind v. Westinghouse Credit Corp.*, 394 A.2d 980, 25 U.C.C.Rep.Serv. 268 (Pa.Super.1978); *In re Paige*, 3 B.R. 115, 28 U.C.C.Rep.Serv. 559 (Bankr.Ct.W.D.Mich. 1980) (*Uhle v. Parts & Trucks*); *In re Williams*, 10 U.C.C.Rep.Serv. 277 (Bankr.Ct.D. Maine 1971); *Town House Motel, Inc. v. Ward*, 2 Ill.App.3d 699, 276 N.E.2d 809; 10 U.C.C.Rep.Serv. 267 (1971).

On the second point, the court has already decided that Indiana law could apply to this truck and that North American was entitled to have a title certificate issued to it as owner. North American was the "owner" of the truck and a resident of Indiana. The Indiana certificate of title law did apply. It should make no difference that the Tennessee certificate of title law also applied.[10]

On the first point, the court must decide whether perfection of the security interest required its "indication" on the title certificate. North American's security interest was perfected by issuance of a certificate showing it as owner. Perfection did not require indication that North American had a "security interest" in the truck.

The court believes that "indication" should not be so narrowly construed as to require identification of the secured party's interest as a security interest. Section 9–103(4) should be satisfied if compliance with the state certificate of title law is the exclusive method of perfection and compliance will give notice that the secured party has some interest in the vehicle.

The Indiana law thus meets the requirements of § 9–103(4). North American's security interest was perfected at the time of Trivett's bankruptcy.

*Summary*

The court concluded that perfection of North American's security interest was to be determined under the Indiana certificate of title law.

North American had the title certificate issued to it as owner on the theory that any secured party (conditional seller) can do so if the debtor (buyer) agrees. The Indiana law may not agree with the theory. But North American was the owner under the part of the definition that includes certain lessees as owners. Though Trivett was the owner under the remainder of the definition, the purposes of the certificate of title law did not demand that Trivett, rather than North American, be the owner on the title certificate.

The Indiana law does not require that a lessee who is shown as the owner on the title certificate be identified as a lessee. Nor does it require that the lessor or the true owner be shown on a title certificate issued to a lessee as owner. Normally the title records would reveal who the true owner is because the outstanding certificate of title and a copy of the lease should be part of the lessee's application for title. Also, a seller is required by statute to assign its certificate of title to the buyer. Since North American did not assign its title certificate to Trivett or rely on the lease to prove ownership, no evidence of Trivett's interest appeared in the title records.

However, in light of the purpose of the certificate of title law, the most serious problem was the failure of the title certificate ·itself to show Trivett's interest. The court held that since Indiana law did not require that Trivett's interest be shown and

---

**10.** The court rejects any circuitous reasoning by which § 9–103(4) of the Tennessee UCC would lead it to § 9–103(2) & (3) of the Indiana UCC and the Tennessee UCC. Compare *Seely v. First Bank & Trust*, 64 Misc.2d 845, 315

N.Y.S.2d 374, 8 U.C.C.Rep.Serv. 559 (N.Y.Sup. Ct.1970) and *In re Antonuzzo*, 20 U.C.C.Rep. Serv. 180 (Bankr.Ct.E.D.N.Y.1976). The court suggests that the circuitous reasoning in the first case was unnecessary to the result.

the title certificate gave notice that North American had an interest in the truck, then North American's security interest was perfected under Indiana law. The Indiana law also met the other requirements of UCC § 9–103(4), and so North American's security interest was perfected at the time of Trivett's bankruptcy.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.